The next case today, number 231684, United States v. John Charles Volungus. Will counsel for the appellant please come up and introduce yourself on the record to begin. Good morning, your honors. Ian Gold on behalf of the appellant, John Volungus. May it please the court, Judge Helpe, may I reserve two minutes for rebuttal? You may, and I'd like if you can start by telling us why we have jurisdiction over this appeal, and then any other arguments you have. Yes, your honor. I think the government's objection on jurisdictional grounds is just based on a misreading of the record. Mr. Volungus was committed as a sexually dangerous person on March 8th, 2012. He's never had a trial to determine whether he was released. There were several preparations over the course of the years for such a hearing. In 2022, the facility where he was committed, the commitment and treatment program at the Butner facility in Butner, North Carolina, opined, the warden opined, that he was a sexually dangerous person. Not ready to be conditionally released. Not sexually dangerous in the event that he was released under a regimen of care and treatment. What happened next is that he was released pursuant to an order of the district court. The record may not be fully, kind of, may not speak to this very clearly, but the order was fashioned with input from probation in the Northern District of New York, where he was going to be released, the commitment and treatment program personnel, the government here in the District of Massachusetts, and counsel for the respondent as well. At the time of his release, counsel for Mr. Belungus requested that he be allowed to provisionally agree to his release, subject to certain objections to the extent of the district court, regarding the extent of the district court's authority, to impose the conditions, but did not want litigation regarding that issue to hold up his release. The district court agreed. He filed, Belungus filed, a series of objections, the same objections that we bring to this court, by a deadline that the court had set. The government responded in January of 2023, just to locate us in 2022, mid-year, he's released pursuant to this arrangement in 2023. The government responds. In an unrelated proceeding, he was then, or in an unrelated incident, he was arrested and detained for failure to abide by certain of the conditions. That takes us to mid-2023. In June of 2023, there was a hearing, which had two purposes. One, Belungus had moved to dismiss the proceedings, because the conditions that he was alleged to have violated were conditions that were outside the scope of the district court's authority and his view. They were part of your objections. They were part of the objections, so we moved to dismiss. We had a bifurcated hearing in June of 2023, before the district court. The district court ruled that it did not, it did not agree with the interpretation of the statute that we were advancing, and then also dismissed the motion to dismiss on the same grounds. And so your client is still subject to all of those conditions to this day, and even though there's now a second revocation proceeding, as I understand it, that's still filed under the conditions that you were objecting to, and that's why you think there's a live controversy and we have jurisdiction. Well, it has nothing to do with the second violation proceeding. No, no, I just mean the fact that your client is continuing to be subject to conditions that you have objected to. Right. We would have brought this appeal and requested this hearing. I think the timing was somewhat long. It could have been litigated in a shorter span of time, but was not. In fact, it was not filed until January of 2023, and then a hearing for reasons that the record is not, doesn't reveal, but I think it's just a delay. The hearing on that does not happen for several months, until June of 2023. But it's that ruling by the district court. We're not here objecting to the ruling on the motion to dismiss. That proceeding has been dismissed. So it's that ruling where the district court affirmed the validity of the conditions that you're protesting here? That's correct. That is the ruling that we have appealed from. And we've been clear about that. It's specified in the notice of appeal. Counsel, can I ask you another procedural question, which is that when the warden filed the certification indicating that he thought your client could be released with appropriate conditions under a treatment regimen, I didn't see in the record that there was any prescribed regimen attached to the certificate. And when I read the statute, it seemed like it needed to be attached. And again, you've indicated that the record may not be entirely clear here, which is definitely what I found in reviewing the case. Can you explain from your standpoint, was that a problem, or is it sort of part of the normal course that there's a certification filed and then the treatment regimen is provided later? Your Honor, I don't know if there is a standard operating procedure. I know in this case, the warden filed a certificate which appears to refer to a treatment regimen. And I know on its face that the order that the district court issued goes beyond a treatment regimen. Well, I guess what I'm asking you is, how can we figure out what even the treatment regimen was that the warden had in mind for a potential release when there was nothing attached? So you've just represented to us that what was eventually submitted to the court and was approved involved consultation with probation, et cetera. But how are we supposed to figure out what the actual regimen was that the warden and presumably the medical and psychological staff at the facility had recommended? So I think that's a good question. I take the position here that the order by its terms speaks to that question and answers that. It says that it has certain treatment-related provisions and the court can rely on the language of the order itself to say this is the treatment regimen, because it has to do with treatment. I'm sorry, counsel. I'm just not following. What order are you talking about right now? The order of release itself. So the order of release itself, I could, refers to the this treatment regimen and other conditions. And then the language of the order itself is clear as to which provisions are the treatment program, because it's self-evidently clear. There are provisions that deal with a requirement to attend treatment, a requirement to attend sessions related to psychological sex offender treatment, polygraph examinations, which are specifically or explicitly related to treatment. So that is the treatment regimen. There are conditions that are related to, that are exactly the same as any supervised release conditions that you might find. So, for example, that he not commit further crimes, that he not associate with minor children, that he wear a GPS monitor, reside in a residential reentry center. In the structure of the order, it's clear that these are extra conditions and in the language of the district court who adopted the order, that those are ancillary or other conditions. But what about the conditions having to do with his access to electronic devices? How are we supposed to figure out if those were recommended by medical professionals given his underlying crime versus ancillary provisions? Well, so I don't have an answer for that, except what I just said, that we would need to infer. But I think I am making another argument here, which is that there is treatment and then there is items that are not treatment. So even if a medical professional recommended a non-treatment condition, that might not get us past the threshold for what the district court has the authority to do. The district court, we spent this time, if I might continue, Judge Helpe. We are making an argument, and if I could just return to it. Before you return to it, what we are trying to figure out is, is the order in and of itself sufficient and whole so that we can understand the nature of your argument, or did the order incorporate by reference this other regime document that is not part of the record? Well, there is no other document. There is no other document. The warden's certificate might naturally have had a treatment regimen attached to it, and it does not. We have been proceeding in this argument on the assumption that the order itself has treatment components and has non-treatment components, and that the record is clear on that score, or sufficiently clear to be able to address the statutory interpretation argument. So there is no missing document. That is what you are saying. There is no other document out there that references any kind of treatment or plan that is not currently in the record. I think that is true. You know, I represented Mr. Valungas below, and so I am just going to say how I would formulate what happened is there was input from three, or the entities I described, the treatment program itself, Northern District of New York probation, the government, and the petitioner, so four entities resulting in one document. There may be a document that just represents the commitment and treatment program's conditions. But is the document the court's order? So the document of the court's order, I have proceeded on this appeal with a... Is the document the court's order? The document that we are dealing with, that we are appealing from, is the court's order. And that is the only document that we have about a treatment regimen. We are just trying to figure out is there something else we could compare it to? No. There is no missing document that contains just the treatment program's view. There is within that document, which refers by its terms to containing a treatment regimen and other conditions. And so I believe it is self-evident by reading the document that there are treatment related conditions, and we specify them. We make the argument in the context of this document by saying that there are certain ones that are treatment related and certain ones are not. But there is no special document that specifically says this was the warden's treatment regimen. Okay. Thank you. You have rebuttal time. Thank you, Counsel. Will Attorney for Eppley please come up and introduce yourself on the  Good morning, Your Honors. Michael Fitzgerald for the Appellee of the United States. Briefly on the jurisdictional issue, when the district court ruled on Mr. Valangas' objections, that's at docket 185, it construed that filing as a motion. And so the question then becoming a motion for what? So it wasn't a Rule 59 or 60 motion, and it wasn't a motion to modify or eliminate the prescribed regimen of treatment. His objection was that there were conditions layered on top of that regimen. If it was a motion to eliminate or modify the prescribed regimen of treatment, the district court would have then had to have held an evidentiary hearing under 4248E. I think the only plausible explanation is that the district court construed the objections as part and parcel of the motion to dismiss, especially considering that Mr. Valangas had incorporated his objections into his motions to dismiss. It also just, I think, would have been odd for the district court to be treating these, or ruling on these motions at the exact same time. It only ruled on the objections in conjunction with the motion to dismiss after the revocation proceedings had been initiated. And so the district court's order and the government's There's no doubt that the court ruled on the objections and that they appealed the ruling. That's correct, but in so doing, the court construed those objections as a motion. And I think what it did was it construed those objections as a motion to dismiss, rendering it a prototypical interlocutory order over which this court would lack a public jurisdiction. But the entire first revocation proceeding is now gone from my understanding, correct? The first revocation motion was withdrawn, but I think of the second motion to revoke really as more akin to a superseding indictment. The second motion to revoke is relying on the same underlying conduct as the first motion to revoke plus additional conduct. Right, but if the, if, you know, just looking at this from a functional perspective, Mr. Valungas objected to the conditions in the district court's order, saying that some of them exceed statutory authority, exceed what the statute permits. He's continuing to be subject to those conditions, and in fact, the second revocation proceeding is based on him violating those conditions. The district court rejected his objections as a legal, this is a legal matter of what the statute permits and doesn't permit. Why, why don't we have jurisdiction to review that? So, I think that... As a practical matter. I mean, as a, as a practical matter, I, I, I do think that it would be probably inefficient to dismiss the appeal and just wait for the, then the next appeal to come up after the revocation proceedings commence, assuming that he was... And that would be assuming that, because one of the things that could happen, there could be no revocation. End of the story. Sure, in which case, I, I think then his option would be to file a motion to modify or eliminate prescribation of treatment. And I'm not trying to be like unreasonably formalistic about it. I understand why he did what he did when he did it. And if, you know, section 1291 admitted to equitable exceptions, he might have a case. It's just jurisdiction is, in, in the government's view, non-negotiable. And so, it is what it is. But I don't, you're saying that it would, this, the second revocation proceeding, what happens, et cetera, it, it does matter. He, he's continuing to be subject to these conditions. And the district court made a final ruling saying that the conditions are consistent with what the statute permits. And so, I, I don't understand your argument that somehow this goes away, depending on what happens with the second revocation proceeding. Well, I, I, I think that... But how would that be different than what he's already done? Because, again, he's making a legal argument, right? He's not making a factual argument. It isn't, there's not going to be witnesses, correct? What, what, what would be different about that proceeding? Practically speaking, I don't think the motion would look different. To be completely candid, Your Honor, practically speaking, I, I don't think the motion would be different. I just, from my best reading of the record, I don't think that's what he did when he filed the objections and I don't think that's what the district court construed it as. I think the district court construed it as a motion to dismiss the revocation proceeding. But, and, to be completely forthright, I, I don't think it would look different, practically speaking. Just to, to move on to, um, the, Your Honor's questions about, is the order of conditional release, um, the prescribed regimen of treatment itself? I think that it is. Reading the, uh, the district court's order of conditional release, it refers to itself as the specific conditions and the prescribed regimen of treatment. I think they're one in the same. The person Counsel, why was there nothing attached to the warden's cert, certification here? And can you just, um, you know, in your experience, is, is this how this process unfolds? If there's a certification filed, it says, um, I now think that this particular individual can be released consistent with the prescribed regimen and says this prescribed regimen, I can pull it, and yet there's nothing attached. In my experience, Your Honor. Why is that a problem? Sure. In my experience, the warden can, uh, submit the prescribed regimen in a few different ways. I have seen it attached to the certification before. I have seen it issued off the docket through a letter to the court. Um. Is that what happened here? I don't believe so. Um, I mean, my reading. Because it says, I find that the prescribed regimen of medical, et cetera, psychological care that has been prepared is appropriate, but there's nothing attached. That's right. So that's at docket 150, the certification. Right. Docket 151 is the proposed order. That's what I read as the prescribed regimen of treatment. As further support for that, I think the content of the, uh, the proposed order itself, uh, makes clear that it's referring to all the conditions as the components. So do you disagree with what Mr. Villegas' counsel indicated, which is that the proposed order actually reflects not just what the, um, you know, medical, psychiatric, psychological treatment professionals at the facility wanted, but also reflects probation, the government, et cetera? I don't know for sure. I don't dispute that it very well could have been a collective judgment by all of those parties. And this is what, um, is that this represents the prescribed regimen of treatment that would be best for Mr. Villegas. It could be a collective judgment. I don't think that's in the record and I don't know for sure. I guess the other piece of evidence I would point to is that when the district court issued the bench warrant, and this is at docket 216, to arrest Mr. Villegas for violating, um, the conditions 41 and 42 of the release order, uh, the district court's reasoning was that Mr. Villegas had failed to comply with the prescribed regimen of medical, psychological, psychiatric treatment. So at the very least, with respect to conditions 41 and 42, I think there's clear evidence that the district court reviewed that as part of the prescribed regimen of treatment. That's, um, uh, the basis for issuing the arrest warrant. Um, I also think that... So, so the court's order embodies the treatment plan and the other conditions of relief, release. Yes? I don't think so, Your Honor. I think the court's order embodies the prescribed regimen of treatment, um, and...  Only. I don't think the district court added on any additional conditions, uh... But counsel, I, I don't understand, because I just asked you if you disagree. I mean, what Mr. Villegas has... And I've tried to look through the record. My law clerks have tried to look through the record, and we can't figure this out, which is why I'm asking you these questions. Mr. Villegas's attorney has represented that it's not just the prescribed treatment regimen. It, it reflects what probation wanted. I mean, they're not medical, psychological, psychiatric professionals. What the government wanted, I assume you're not claiming to be a professional, um, comments from Mr. Villegas, and what the facility had required. So, if you agree with that, then the, the district court's order is not simply the prescribed regimen, and we have to address the statutory, uh, construction arguments that Mr. Villegas has posed. So, do you agree or disagree with that factual question? Not, not trying to dodge the question, Your Honor, just to be very precise, because I wasn't trial counsel at this point, so I don't have the... I, I understand that completely, just to the best of your ability. I, my, my answer is I think that regardless of the participation of probation, U.S. Attorney's Office, so long as that, you know, they were doing that in consultation with the medical professionals at FCI Butner, and then that was what was presented to the court, um, I think that can be fairly, I think that is fairly described as the prescribed regimen of medical psychiatric treatment, even if it was informed by non-medical personnel. If that's what the ward and certified as this is what's good, I think that is under the statute prescribed regimen of medical treatment. I think Mr. Villegas, uh, respectfully, I think he's relying on an intuition that some of the things in the, the order of conditional release just don't seem medical enough to him, um, but I, but I do think that gets into a very fact-intensive judgment that requires medical expertise. You know, for instance, the condition that, um, he not own a gun, that is a condition that is, is in prescribed regimens of medical treatment. That is what this court, I think, confronted in United States v. Ecker. That was part of the warden's proposed regimen of medical treatment. Similarly, things like the residence requirement. I think Mr. Villegas is just sort of stating in, in a conclusory manner that, well, those obviously aren't treatment conditions, and I, and I don't think it's obvious. Um, for instance, the, the Fifth Circuit in the Washington case, you know, recognized that a residency requirement can be a vital part of a medical treatment plan. But if your argument is that these can be, and in fact were, um, blessed by, you know, medical professionals, then isn't it a problem that the record doesn't actually show us what happened? Because if you're saying we don't really need to get into this complex statutory construction question, this was all blessed by medical professionals, that seems to be a factual argument that the record right now is just silent on. Um, and then if, if that's, if the record is silent, I'm just wondering what to do with the fact that just because, you know, somebody calls something a medical, uh, treatment regimen, you know, doesn't make it so. Which is, I think, the legal argument here. But I, I'm just not sure how we're supposed to figure that out when we don't even know where all of these conditions came from. Sure. Your Honor, um, and if I may, uh, proceed past my time. I think that, uh, if the, the court could side with the government's view that this was the prescribed regimen of treatment and, and, um, then find that the statutory, uh, question isn't, um, uh, presented. But if the court still has the concern that, well, you know, even if that is the prescribed regimen of treatment, it's just, you know, just the, the district court can't rubber stamp that and, you know, make it be. So, um, I do think that, you know, Mr. Valungas would have had to have lodged essentially fact, uh, objections to the district court's factual findings. I think ultimately, whether that's an appropriate regimen of medical treatment would be a factual finding that would, that this court would review for abusive discretion at that point. And so I just don't think that, that could certainly be an objection in appropriate case, even in this case, if Mr. Valungas made those objections, um, in the revocation proceedings. At what point, are you saying the court made factual findings? I don't think the court made factual, well, let me put it this way. I think that the finding that the prescribed regimen of treatment was appropriate, I think that is a factual finding that will be reviewed for abusive discretion. What was objected to here, and I think what's presented on appeal, is the pure statutory interpretation question that the court would review de novo. And so, but if the court were to find that, I just think that some of this is the prescribed regimen of treatment, and some of it is not. I think that the district court layered those conditions on top of the prescribed regimen of treatment, then I do think the statutory interpretation question would be, would be presented. But the government's position is that everything is part of the prescribed regimen of treatment. That's correct. Even something like, don't commit any more crimes. That's correct. I think that was part of the prescribed regimen of treatment. Um, and you know, some of the conditions, you certainly, there certainly could be. And pay for your treatment. Yes, Your Honor. I mean, well, I think certainly the, to pay the cost associated with treatment would naturally be part and parcel of the prescribed regimen of treatment. If you're asking him to take certain medication, um, I think it's certainly part of that prescribed regimen of treatment that he would pay for that medication. Um, it wouldn't be presumed that somebody else would pay for it. Um, but in the government's view, that question just isn't presented. I would, uh, respectfully suggest that the disposition of this case could mirror that of the Fifth Circuit's disposition in United States versus Washington. Let me ask just one question out of curiosity. I know in the briefs it's mentioned that the district, or at least when the briefs were submitted, the district court hadn't issued any further rulings. Nothing else happened at the district level? There has been some progress made at the, uh, the, in the revocation proceedings. Um, my understanding is that Mr. Valangas, what, uh, was transported, um, back down to FCI Butner for, to undergo a, um, expert medical evaluation. My understanding is that evaluation has taken place and he has now been, uh, transported back up to Boston for the, um, ultimate revocation hearing that I don't think has been scheduled yet, but I, I think would be scheduled imminently. The second revocation proceeding? That's correct, Your Honor. Okay, thank you. Thank you, counsel. Will Attorney Gold please reintroduce yourself for the record? You have a two-minute rebuttal. Uh, thank you. Uh, Ian Gold on behalf of, uh, the appellant, Mr. Valangas. Um, I, I'd just like to, I, I think we're getting a little bit, uh, off track in terms of, uh, uh, some of the issues are, that can be cleared up just by careful attention to the record. So, on, at the addendum on page 29, the district court is very clear that he's ruling on the objections, uh, that we made. So to the extent that there's the objections that were raised last August and have included requests for some relief from breadth of interpretation, the request is denied. There was no ambiguity there that was in June of 2023. So that's a final order. That's what we're appealing. I've been, or, Mr. Valangas has been very consistent throughout in, in indicating what Mr. Valangas states are the treatment-related conditions. And he asks this court to vacate certain conditions, 6, 7, 8, 9, and 19. The assertion is, I mean, we don't have a specific document from the ward and attended to the certificate, but the assertion is that those are the treatment-related conditions. And the language of the order itself, which is the first page of the addendum, specifically says that it contains a regimen of medical, psychiatric, or psychological care or treatment and specific conditions. So there is... Where does it, where does it say that, in the first paragraph? The respondent, John Valangas, be conditionally released under the following specific conditions and prescribed regimen. So there are two separate things. I don't think any of this needs to detain us from joining the question that we presented to the court, which is a question of first impression in this court, and it's the extent of the court's under these mental health statutes to impose conditions. Counsel, so going to the heart of your argument, I think the reason we were asking the other questions is you've, it seems to me, conceded or your position is that there are conditions ancillary to the prescribed regimen, the prescribed treatment regimen that a district court could put into place. I think that was your argument, right? That it's not just the prescribed treatment regimen, but some additional related... No, no. I think we're going full, or I'm searching for a phrase, but we're swinging for the fences here in the sense that we're saying any condition that's not part of a regimen is not part of the toolkit that the district court has to impose orders of release in this context. We think that the 11th Circuit was absolutely right in its interpretation of this statute, its language, and its context. As we develop in the briefs and as the 11th... When the district court overruled your objections, is it your position that the court was making factual findings that the conditions to which you were objecting were, in fact, part of a medical regime, or is it your position that the court was ruling as a matter of law that those conditions were part of the regime? Your Honor, if I might just say, I may have misspoke just a minute ago when I said I asked the court to vacate the conditions that I mentioned. I meant to say all but those conditions, and those are the treatment-related conditions. The argument before the district court assumed that there were treatment-related conditions that we had identified that were treatment, and that there were other conditions, and was framed as a legal argument about the district court's authority to impose the latter at all. And so there were no findings, but I think the pleadings themselves make clear that there were treatment-related conditions, and that's what we were discussing, and then non-treatment-related conditions. The petitioner responded sometimes, but Mr. Valungas was asserting that certain conditions were outside the scope of the authority of the district court to impose. The government... But does it matter if those conditions were factually deemed to be part of a treatment plan, or are you saying that we have to assume that those conditions to which you object are outside of the treatment regime? So I think that's a separate factual issue that could come up. So for example... What is up here? What's up here? Well, what's up here is the authority of the And we assert, and we think the record supports this assertion, that those are the treatment-related conditions in this case. That's what we assert. We assert also that, and we're basing ourselves on a minority position, the 11th Circuit's decision in Crape, which is now 14 years old, which severely limited the district court's authority to fashion orders like this. And this is standard procedure in many of these cases, and we're challenging that practice and the legal basis for the district court's authority to do that. We think Congress was very explicit in policing the divide between criminal and civil law when it fashioned these conditions. If you look at the revocation... So you're saying the ones to which you object are treatment-related. You're saying that they're treatment-related, but you just don't think the statute allows the government, I mean the court, to impose them. No, I'm not conceding they're treatment-related. No, I'm making an assertion that, based on the document as it is, we have no separate document that says, I am the regimen. But I think the order states that it contains specific conditions and the treatment regimen, and that if you read the order, I think it's clear that there are treatment-related provisions and then non-treatment-related provisions. You're only agreeing that about five of the conditions are treatment-related, and essentially you want us to follow the reasoning of the Eleventh Circuit's decision. That's the essential argument. I can talk about that more. It is a novel, not novel, I mean obviously it's a minority position, but I think one of the issues that I just wanted to request the panel pay attention to is not just the language itself, which really focuses on a regimen of treatment. The only reason that you could, the language is quite clear in the revocation proceeding, where the only reason that a district court is given as a basis for violating the conditions of release is failure to abide by a treatment regimen. And in Crape, you had one of those guys who liked to send threats, and he was released on a requirement that he may consistently do his treatment, and he was revoked because he'd sent threats. And the counterintuitive ruling, but I think statutorily, constitutionally based of the Crape court, was that that common sense provision was outside the scope of the district court's circumscribed authority in these mental health statutes where the court, or where Congress is asking the courts to police this divide between criminal law and civil law having to do with mental illness. The Eleventh Circuit's conclusion was the government could have prosecuted him for a new crime. Correct. By sending the threatening letters, and then it would have been required to follow all of the requirements of proof beyond a reasonable doubt, etc., or a plea, instead of just being able to eliminate his liberty under the conditional release order. That's essentially the reasoning. The government is not without a remedy to do these commonsensical things, but the logic of the statute is, because you can't be held for danger alone, right? You have to be prosecuted for a crime or be charged with a crime. The danger has to be due to a mental condition. The logic of the statute clearly follows if we treat the medical condition, you may no longer be dangerous. Then you can be safe to be released. If you stop complying with the treatment, then we can police that, but it doesn't allow for the fashioning of what are essentially the identical order that you would find in any criminal case, and we suggest to the court that that's a problematic state of affairs. Thank you, counsel.